IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARKUS MEIER,

                Plaintiff,

v.

WRIGHT MEDICAL TECHNOLOGY, INC.,
WRIGHT MEDICAL GROUP, INC., ABC
INSURANCE COMPANY, DEF INSURANCE
COMPANY, and DEAN HEALTH PLAN,

                Defendants.

OPINION & ORDER

14-cv-505-wmc

    In this civil action, plaintiff Markus Meier claims to have suffered serious injuries from a defective hip replacement implant, the PROFEMUR® hip, which was manufactured and sold by defendants Wright Medical Technology, Inc. and Wright Medical Group, Inc. As the parent company, Wright Medical Group, Inc. has moved to dismiss the claims against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (Dkt. #18.) For reasons discussed below, the court find that Meier has failed to establish a prima facie case of personal jurisdiction over WMG, and so it will grant the motion to dismiss.

ALLEGATIONS OF FACT

**I. Allegations in the Complaint**

    Wright Medical Group ("WMG") is a Delaware corporation with its principal place of business in Arlington, Tennessee. Wright Medical Technology, Inc. ("WMT") is a wholly-owned subsidiary of WMG and also a Delaware corporation with its principal

place of business in Arlington, Tennessee. Wright Medical Europe, S.A. ("WME") is a foreign corporation with its principal place of business in France. It, too, is a wholly-owned subsidiary of WMG. Collectively referred to as "Wright" in the complaint, the defendants are alleged to have designed, manufactured, labeled, marketed, promoted, distributed and sold various prosthetic orthopedic devices in the United States, including the Wright Medical PROFEMUR® Hip.[1]

In December of 1999, Wright acquired a European manufacturer of artificial hip devices known as Cremascoli Ortho, which had designed and manufactured artificial hips with a modular neck component. On December 13, 2000, Wright received approval from the United States FDA to distribute the first PROFEMUR® hip devices, which included Cremascoli's modular neck component. Thereafter, Wright began to manufacture, market and sell the Wright Medical PROFEMUR® Hip.

The PROFEMUR® Hip's modular neck component was made of a titanium alloy known as Ti6A14V. It came in twelve models, six of which were described as "long necks" and six as "short necks." According to marketing materials published between 2002 and 2005, the modular necks had been successfully implanted in over 50,000 patients, and none of them had experienced a clinical failure.

In 2001, however, Wright made a design change to the modular neck components to increase the potential range of motion a patient could have in his or her hip post-implantation. In making the design change, Wright also changed the geometry, weight and mass of the modular necks.

---

[1] Previously, WME was also a defendant in this matter. On November 12, 2014, however, the parties stipulated to the dismissal of WME. (Dtk. #28.)

In 2005, Wright received its first notification of the fracture of a PROFEMUR® modular neck in one of the post-2001 designs. Going forward, Wright continued to receive additional notices of PROFEMUR® modular neck fractures, all of which also involved post-2001 designs. Of those fractures, more than 95% have occurred in the "long neck" designs.

Despite an increasing rate of fractures, Wright did not publicly inform surgeons of concerns with its PROFEMUR® modular necks until December 1, 2008, when it sent a Safety Alert to "medical professionals." The Alert indicated that Wright had received reports of 43 modular neck failures as of November 21, 2008, with commonalities including "heavy-weight males, long modular necks, and patient activities such as heavy lifting and impact sports." Despite issuing this warning, Wright did not change the language in its Instructions for Use until August of 2010. Furthermore, patient testimonials appearing on the Wright Medical webpages and in printed materials have represented that users of PROFEMUR® hip replacements are returning to physically arduous activities, including some testimonials from men weighing in excess of 250 pounds.

In 2010, Wright began offering PROFEMUR® modular necks made of cobalt chrome, which is (1) stronger than the Ti6A14V modular necks, (2) less susceptible to fretting corrosion, and (3) less likely to fail from cyclic loading and metal fatigue after implantation. Wright has never informed patients who received PROFEMUR® long modular neck made of Ti6A14V that those products have experienced a higher-than-anticipated rate of failure, nor has it ever informed patients, either directly or indirectly,

that higher weight or activity levels may increase the risk of failure due to fractures of the long modular necks.

On October 16, 2006, plaintiff Markus Meier had a PROFEMUR® Hip implanted in the right side of his body. After the implantation, Meier used his PROFEMUR® Hip normally, but on June 6, 2013, the modular neck component failed suddenly and catastrophically. On June 11, 2013, the PROFEMUR® Hip was surgically removed at St. Mary's Hospital in Madison, Wisconsin, in a procedure known as a "revision."

**II. Evidence Proffered by Wright**

Defendants have moved to dismiss WMG from this suit for lack of personal jurisdiction. In support of their motion, they offered the Declaration of James A. Lightman, who is the Senior Vice President and General Counsel of WMT and claims to have personal knowledge regarding the corporate status and activities of WMG. Specifically, Lightman avers that WMG is a holding company with no employees whose shares are publicly traded on the NASDAQ stock exchange. (Lightman Decl. (dkt. #10) ¶ 3.) WMG is the parent company of WMT, and its sole shareholder. (*Id.* at ¶ 4.) WMG and WMT maintained separate accounting and banking records at times when each entity had such records. (*Id.* at ¶ 5.) WMG is not registered to do business in Wisconsin, does not transact business in Wisconsin, maintains no offices or places of business in Wisconsin, owns no real property in Wisconsin and has no clients or employees in Wisconsin. (*Id.* at ¶ 6.) Nor does it advertise, market or offer services for sale in Wisconsin. (*Id.* at ¶ 7.)

With respect to the PROFEMUR® Hip at issue in this case, the FDA provided marketing clearance to WMT, not WMG. (*Id.* at ¶ 8.) WMG did not design, manufacture, sell, market or distribute the PROFEMUR® Hip in question, nor did it issue any warnings regarding that product. (*Id.* at ¶ 9.)

## OPINION

As the plaintiff, Meier has the burden of proving that personal jurisdiction exists. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (citing *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994)). In resolving this motion to dismiss, the court accepts as true all undisputed factual assertions that Meier makes and resolves all disputes of relevant facts in his favor. *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980). Because Wright has submitted affidavits or contesting personal jurisdiction, however, Meier must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Because the court resolves this motion on the written materials only, however, Meier need only show a prima facie case for personal jurisdiction. *Neiman*, 619 F.2d at 1190. Even under this lenient standard, Meier still fails to establish personal jurisdiction over WMG.

## I. Preliminary Arguments

Before addressing the merits of WMG's motion to dismiss for lack of personal jurisdiction, Meier advances two preliminary arguments that he contends warrant summary denial of the motion. The court briefly addresses each below.

A.  **The Court Should Disregard Lightman's Declaration**

Meier first argues that the Lightman declaration is so unreliable that the court should afford it no persuasive value in its personal jurisdiction analysis.  In particular, he contends that Lightman's statements that WMG was not involved in the manufacture, distribution or sale of the PROFEMUR® Hip directly contradict WMG's filings with the Securities and Exchange Commission ("SEC").  In support, he offers several pages from WMG's 2001 Form 10-K, as well as several pages from the 2013 Form 10-K, which purportedly establish that WMG was, in fact, the manufacturer of the PROFEMUR® Hip.

Certainly, as noted above, "under the prima facie standard, [Meier] is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor," *Purdue*, 338 F.3d at 783, but Meier offers no reason why the court should go a step further and summarily reject WMG's entire motion due to an ostensible dispute of fact, particularly given that the Seventh Circuit has expressly provided for a different procedure when such conflicts arise.  Furthermore, the so-called "inconsistencies" that Meier identifies are not really inconsistent at all.  The 2001 Form 10-K states that "Wright Medical Group, Inc. (the 'Company') is a global orthopaedic device company specializing in the design, manufacture and marketing of reconstructive joint devices and bio-orthopaedic materials."  (Robert J. Gingras Decl. Ex. A (dkt. #24-1) 3.)  But as WMG points out, since 2001, its other Forms 10-K spanning the years 2002 through 2013 have contained modified language indicating that WMG, "through Wright Medical Technology, Inc. and other operating subsidiaries," is a global orthopaedic medical device company that

6

specializes in such design, manufacture and marketing. (*See* Br. Reply Ex. A (dkt. #26-1) 4, 7, 10, 13, 16, 19, 22, 25, 28, 31, 34, 37.) Accordingly, the 2001 Form 10-K, which apparently refers to an earlier corporate structure, does not place into dispute WMG's representation that it does not currently manufacture, distribute, market or sell the PROFEMUR® Hip in Wisconsin.

Meier's use of the 2013 Form 10-K is similarly unavailing, since he selectively quotes the following portions of it in his brief:

- Stryker's . . . modular neck hip stems differ in design and material from the PROFEMUR® modular neck systems *we sold*. . . .

- We received a subpoena . . . requesting records and documentation relating to *our* PROFEMUR series of hip replacement devices . . .

- We are a defendant in 25 lawsuits in various state and federal courts involving claims for damages for personal injury associated with fractures of *our* PROFEMUR® long titanium modular neck product . . .

- [We] received a customary reservation of rights from our primary product liability insurance carrier asserting that present and future claims related to fractures of *our* PROFEMUR® titanium modular neck hip products . . . would be covered . . .

- [We] received a subpoena from the U.S. Attorney's Office for . . . records and documentation relating to *our* PROFEMUR® series of hip replacement devices . . .

- [I]n 2009, we began offering a cobalt-chrome version of *our* PROFEMUR® modular neck.

(Pl.'s Br. Opp'n (dkt. #23) 7-8 (emphasis in plaintiff's brief).) But the 2013 Form 10-K also makes clear in its very first paragraph that "Wright or we" refers to "Wright Medical Group, Inc., through Wright Medical Technology, Inc. (WMT) and other operating subsidiaries." (Gingras Decl. Ex. B (dkt. #24-2) 4.)

7

Read in context, therefore, Meier's cherry-picked quotations certainly do not "shatter any illusion that Wright Medical Group is not the manufacturer, distributor, and developer of the PROFEMUR® Hip," as Meier contends. (Pl.'s Br. Opp'n (dkt. #23) 8.) They do not even establish a conflict as to whether WMG itself has any employees or conducts any business activities in Wisconsin. Thus, the court declines to disregard the Lightman declaration in conducting its analysis.

### B. The Motion is Premature

Meier alternatively argues that WMG's arguments are inappropriate for a Rule 12(b)(2) motion to dismiss and ought to be deferred until summary judgment. As an initial matter, Rule 12(b) expressly provides that the defense of lack of personal jurisdiction may be raised by motion, and that such a motion "*must* be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added.) By failing to bring such a motion timely or include it in a responsive pleading, a party can forfeit its personal jurisdiction defense. Fed. R. Civ. P. 12(h)(1); *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996). Thus, Meier's general statement that WMG's arguments "are not appropriate for a motion to dismiss" is incorrect, just as WMG's rejoinder that it would necessarily have waived that defense if it had not made the motion is also incorrect, since it could have reserved that defense via a responsive pleading instead of a Rule 12(b) motion. *See* Fed. R. Civ. P. 12(h)(1)(B)(ii).

Meier also implies that the court should delay consideration of WMG's arguments until jurisdictional discovery can take place on the issue of whether WMG itself participated in the creation, manufacturing and distribution of the PROFEMUR® Hip

(although Meier does not directly request such a delay). "At a minimum," however, Meier "must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Accordingly, the court must consider whether on the written submissions alone, Meier has adequately made a colorable showing of personal jurisdiction over Wright's parent holding company, WMG. If so, he will be permitted to engage in jurisdictional discovery; if not, his failure justifies denying jurisdictional discovery under Seventh Circuit case law.

**II. Motion to Dismiss**

In diversity cases like this one, a federal district court has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *RAR, Inc.*, 107 F.3d at as75 (quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)). The inquiry is, therefore, a two-step process. *First*, the court must determine whether the Wisconsin long-arm statute, Wis. Stat. § 801.05, would subject Wright to personal jurisdiction in Wisconsin courts. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990). *Second*, if the answer is yes, the court must determine whether the exercise of personal jurisdiction under § 801.05 nevertheless violates the due process requirements of the Fourteenth Amendment. *Id.* Since the Wisconsin statute "is intended to reach to the fullest extent allowed under the due process clause," the inquiry can sometimes collapse upon itself. *Id.* at 1217.

"The nature, quality and quantity of contacts necessary to establish jurisdiction depend on the type of jurisdiction asserted: general or specific." *Insolia v. Philip Morris*

9

*Inc.*, 31 F. Supp. 2d 660, 668 (W.D. Wis. 1998). Establishing general jurisdiction requires that the defendant have continuous and systematic contacts with the forum state, but the cause of action need not arise out of or relate to the defendant's activities in the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). This is a high threshold: "the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). In contrast, a court may exercise specific jurisdiction over a defendant "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Wisconsin's long-arm statute "accommodates general and specific jurisdiction through different provisions." *Insolia*, 31 F. Supp. 2d at 668. Here, Meier points to one provision to support his argument for general jurisdiction, and another to support his alternative argument for specific jurisdiction. Ultimately, neither proves availing.

### A. General Jurisdiction

To support his assertion of general jurisdiction, Meier relies on Section 801.05(1)(d). This provision states in relevant part that courts have jurisdiction over a defendant "who when the action is commenced: . . . (d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d). The only activities that Meier identifies, however, are those of the Wright defendants *in general* -- that is, those

10

allegations in his complaint that *collectively* the Wright defendants designed, manufactured, labeled, marketed, promoted, distributed and sold the Wright Medical PROFEMUR® Hip in the United States, presumably including within Wisconsin. As discussed above, WMG has proffered unrebutted evidence that *it* did not take any of those actions, at least not directly.

All that Meier has to support the exercise of jurisdiction over WMG is the fact that it is the *parent corporation* of at least one entity that designs, manufactures, markets, promotes, distributes and sells the accused products. (*See* Pl.'s Br. Opp'n (dkt. #23) 6 (citing to pleading that WMG took those actions "directly or through its aforesaid subsidiaries or affiliates").) Unfortunately for Meier, both the Supreme Court of Wisconsin and the Seventh Circuit have squarely rejected general jurisdiction premised on nothing more than a parent-subsidiary relationship. *See Reimer Express*, 230 F.3d at 943 ("[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary"); *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, 335 Wis. 2d 1, 803 N.W.2d 623 (holding that mere agency relationship between parent corporation and subsidiary is not enough to support general jurisdiction under Wis. Stat. § 801.05(1)(d)). These holdings are grounded by the principle of corporate law that "[c]ourts begin with the presumption of corporate separateness," in the context of bith personal jurisdiction and liability. *Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007). "This presumption can be rebutted only if 'there is a basis

11

for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent[.]'" *Insolia*, 31 F. Supp. 2d at 669 (quoting *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)).

"[I]n order to accord general personal jurisdiction over a nonresident corporate defendant . . . there must be something more than merely an agency relationship. As in other circumstances where general personal jurisdiction is sought for a nonresident defendant based on the acts of another in an alleged agency relationship with a subsidiary, there also must be control by the nonresident parent corporation sufficient to cause us to disregard the separate corporate identities of the subsidiary and the parent corporations." *Rasmussen*, 2011 WI 52, at ¶ 35. In particular, "in assessing corporate separateness, Wisconsin courts have focused most directly on the amount of control that one corporation exercises or has the right to exercise over the other; whether both corporations employ independent decision-making; whether corporate formalities were observed; whether the corporations operated as one corporation; and whether observing the corporate separateness would facilitate fraud." *Id.* at ¶ 38.

The *only* evidence in the record with respect to these factors is Lightman's sworn statement that WMG and WMT maintained separate banking and accounting records when both entities had such records. While this weighs against piercing the corporate veil, Meier's real problem as the party with the burden of proof is his failure to offer *any* evidence showing that: (1) WMG exercises a significant amount of control over its subsidiaries; (2) WMG and its subsidiaries have failed to make decisions independently or observe corporate formalities; (3) WMG and its subsidiaries operate as one

corporation; or (4) adhering to the presumption of separate corporate identity would perpetrate a fraud. Meier has advanced *no* basis for piercing the corporate veil in this case. Therefore, no basis exists for exercising general jurisdiction under either § 801.05(1)(d) or the due process clause.

As a final argument, Meier briefly invokes the general rule that the court is to resolve factual disputes in his favor on a Rule 12(b)(2) motion to dismiss, arguing that the court must presume at this point that WMG itself made and sold the PROFEMUR® Hip based on the allegations in the complaint alone. But where the defendant has submitted affidavits or other evidence opposing the exercise of personal jurisdiction, as is true here, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783 & n.13 (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001)). Meier has simply not done so.

B. **Specific Jurisdiction**

Alternatively, Meier argues that this court may exercise specific jurisdiction over WMG under Wis. Stat. § 801.05(4)(b), which states in relevant part that a court may exercise jurisdiction "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, . . . (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade." Meier's problem with respect to asserting personal jurisdiction here remains the same: nothing in the record suggests that WMG *itself*

manufactured the PROFEMUR® Hip components that allegedly caused Meier's injury. Accordingly, the court must again consider whether the alleged activities of WMG's subsidiaries support the exercise of specific jurisdiction over WMG itself.

The threshold for holding a parent subject to jurisdiction based on its subsidiary's activities is somewhat lower in the context of specific personal jurisdiction. A court may exercise specific personal jurisdiction over a parent corporation based on its subsidiary's activities when an agency relationship exists. *See Insolia*, 31 F. Supp. 2d at 671. While *Insolia* specifically addressed § 801.05(4)(a), not § 801.05(4)(b), the Supreme Court of Wisconsin appears to have extended that conclusion generally, noting that "Wis. Stat. § 801.05(4) provides for specific personal jurisdiction based on the acts of an agent so that a Wisconsin forum is not denied when the facts show that a Wisconsin forum should be accorded. . . . Specific personal jurisdiction is a limited form of personal jurisdiction well[-]tailored to an agency relationship." *Rasmussen*, 2011 WI 52, at ¶ 34 (internal citations omitted). "As *Insolia* correctly notes, no other provision of Wisconsin's long-arm statute besides Wis. Stat. § 801.05(4), which relates to specific personal jurisdiction, 'supports the exercise of jurisdiction based on an agency theory.'" *Id.* at ¶ 24 (quoting *Insolia*, 31 F. Supp. 2d at 671).

In Wisconsin, an agency relationship requires a principal and an agent, "the latter of which is defined as 'a person authorized by another to act on his account and under his control.'" *Kolbe & Kolbe Millwork Co. v. Manson Ins. Agency, Inc.,* 983 F. Supp. 2d 1035, 1041 (W.D. Wis. 2013) (quoting *Arsand v. City of Franklin*, 83 Wis. 2d 40, 48, 264 N.W.2d 579 (1978)). However, the mere existence of a parent-subsidiary

relationship between two entities is *not* enough by itself to establish an agency relationship. *Zurich Am. Ins. Co v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005); *Insolia*, 31 F. Supp. 2d at 671 (citing *Flintridge Station Assocs. v. Am. Fletcher Mortg. Co.*, 761 F.2d 434, 437 (7th Cir. 1985)).

Once again, Meier failed to offer any evidence or argument demonstrating that an agency relationship existed between WMG and any subsidiary that manufactured the PROFEMUR® Hip. This is fatal to his claim that the court may exercise specific jurisdiction over WMG, since that claim is premised *entirely* on the activities of WMG's subsidiaries, rather than WMG itself. Meier has failed to make even a prima facie showing of personal jurisdiction over WMG. Accordingly, WMG must be dismissed from this case.

## ORDER

IT IS ORDERED that:

1) Defendant Wright Medical Group, Inc.'s motion to dismiss for lack of personal jurisdiction (dkt. #18) is GRANTED.

Entered this 30th day of March, 2015.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge